UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DRIVING SCHOOL ASSOCIATION OF OHIO, | ) ) ) Case No. 1:92-CV-00083 |
| Plaintiff, | ) ) |
| v. | ) JUDGE ANN ALDRICH ) ) |
| CHARLES D. SHIPLEY, DIRECTOR, et al. | ) ) |
| Defendants. | ) MEMORANDUM AND ORDER ) |

On October 30, 2008, plaintiff Driving School Association of Ohio ("DSAO") moved to reopen this case [Doc. No. 141], asking defendants Kenneth Morckel ("Morckel"), Karen Kadar ("Kadar"), and Dale LaRue ("LaRue") (collectively, the "defendants") to show cause why they should not be held in contempt of this court's 1992 injunction [Doc. No. 44]. DSAO is a trade association representing privately owned commercial driver training schools operating in Ohio. These schools teach driving skills to (1) individuals under the age of 18 who wish to receive a driver's license, and are therefore required to pass a driver training course pursuant to Ohio Rev. Code § 4507.21(B); (2) individuals who have been directed by a state court to attend remedial driving classes, pursuant to Ohio Rev. Code § 4510.038(A); and (3) individuals who wish to learn how to drive commercial vehicles and motorcycles. Morckel is the director of the Ohio Department of Public Safety (the "ODPS"). Kadar is the manager of driver training for the ODPS. LaRue is a driver training field staff representative for the ODPS.

On December 11, 2008 the court denied the defendants' motion to abstain under both the *Younger* and *Pullman* doctrines. For the reasons set forth below, the court does not hold the defendants in contempt.

**I.      Factual Background**

On July 9, 1992, this court entered an injunction (the "1992 injunction") enjoining the Ohio Department of Highway Safety (now the ODPS) from pursuing any "'unmotivated and unreasonable' actions that disrupt the commercial driving schools' businesses" [Doc. No. 44].  On January 10, 2006, DSAO moved to reopen this case [Doc. No. 55], asking the defendants to show cause why they should not be held in contempt of this court's 1992 injunction.  Specifically, DSAO alleged that the defendants were engaging in harassing behavior in the prosecution of their inspection policy, in violation of the 1992 injunction.  DSAO also filed an amended motion to show cause [Doc. No. 119] on June 30, 2006.

On June 28, July 5, and July 6, 2006, this court held a show cause hearing before granting the defendants' motion for abeyance [Doc. No. 116] on March 30, 2007.  In that order [Doc. No. 140], this court concluded that proceedings should be held in abeyance pending the resolution of two state court hearings.  On October 30, 2008, DSAO filed the instant motion to reopen this case and again asked the defendants to show cause why they should not be held in contempt of the 1992 injunction.  As grounds for the motion, DSAO alleges that (1) the defendants misused regulations as a basis for administrative enforcement actions; (2) the defendants misused inspections as a "duck blind" from which to conduct intimidating and harassing investigative activities without probable cause; (3) the defendants disparately implemented their enforcement discretion to target driving schools or individuals who challenged the ODPS inspection policy or who testified against Kadar in this case; (4) Kadar interfered with Dan Cox's ("Cox") teaching relationship; and (5) the ODPS and Kadar failed to issue a license or provide an administrative hearing to Constance Werrowen ("Werrowen").  On January 7, 2009, the plaintiffs voluntarily dismissed the last claim concerning Werrowen.

**II.     Standard**

"When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). A court may hold a litigant in contempt for failure to comply with the court's order if "he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id.* at 379 (quoting *Cincinnati Bronze*, 829 F.2d at 591. The burden rests on the party seeking a contempt finding to establish a violation of the previous order by clear and convincing evidence. *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991) (citing *Cincinnati Bronze*, 829 F.2d at 590). "There is no requirement of willfulness to establish civil contempt, and the intent of a party to disobey a court order is irrelevant to the validity of a contempt finding." *Nettis Envtl., Ltd. v. IWI, Inc.*, 46 F.Supp.2d 722, 726 (N.D. Ohio 1999) (quoting *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)); *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985).

**III.    Analysis**

   *A.     Defendants' Misuse of Regulations as a Basis for Administrative Enforcement Actions*

DSAO claims that the Morckel's and Kadar's prosecution of administrative license revocation cases against driving schools that refused to allow inspection of classroom and behind-the-wheel instruction is in violation of the 1992 injunction. Until July 2005, inspectors for the ODPS did not generally inspect classroom or behind the wheel instruction. In July 2005, the ODPS implemented a new policy requiring inspectors to observe classroom and behind-the-wheel instruction at the driving schools. DSAO claims that such inspections are not authorized by Ohio law, and, therefore, are

unreasonable and unmotivated. The current rule governing inspections of driving schools reads as follows:

> Every place used as an office or classroom by a driver training enterprise shall be subject to inspection by the director during reasonable hours. The enterprise's authorizing official or the school's training manager shall make school records, vehicles, and facilities required by this chapter of the Administrative Code available to the director for inspection. The training manager or authorizing official shall make any records accessible for copying.

Ohio Admin. Code § 4501-7-20. DSAO argues that the policy of requiring inspection of classroom and behind-the-wheel instruction is an unreasonable rule that was adopted without complying with the promulgation procedures of Ohio Rev. Code. § 119.

DSAO claims that the defendants are only authorized to inspect a driving school's physical classrooms and vehicles, not the classroom and behind-the-wheel instruction. In support of this interpretation, DSAO points to another section of the Ohio Administrative Code which states that inspectors may participate in *remedial* driver training courses *as a student*. *See* Ohio Admin. Code § 4501-21-07. DSAO claims that the Code's allowance of instructional observation applies only to remedial classes, applies only to inspectors participating as students, and precludes any other inspection of instruction. Furthermore, DSAO claims that, in a surreptitiously recorded telephone conversation, Kadar admitted that the inspection of classroom and behind-the-wheel instruction was a "gray area" of the law, and that she would not charge driving schools that refused to allow such inspections.

The defendants claim that their authority to inspect classroom and behind-the-wheel instruction is derived from Ohio Rev. Code § 4508.02, which provides, in part, as follows:

> (A)   The director of public safety . . . shall adopt and prescribe such rules concerning the administration of enforcement of this chapter as are necessary to protect he public. The director shall inspect the school facilities and equipment of applicants and licensees and examine applicants for instructor's licenses.
> (B)   The director shall administer and enforce this chapter.

-4-

> (C)    The rules shall require twenty-four hours of classroom instruction, and eight hours of actual behind-the-wheel instruction conducted on public streets and highways of this state for all beginning drivers of noncommercial motor vehicles who are under age eighteen.

The defendants claim that the inspections of classroom and behind-the-wheel instruction are necessary to administer and enforce the code. Furthermore, the defendants claim that it is reasonable to interpret the inspection of "facilities and equipment" as including instruction. *See Mashak v. Poelker*, 367 S.W.2d 625, 629 (Mo. 1963) (finding the term "facilities" to include instruction because "[a] school with a complement of pupils in every room, but lacking teachers, would certainly not have the facilities to carry on educational work"). Finally, Kadar claims that her alleged admission that the inspection of classroom and behind-the-wheel instruction is a "gray area" of the law was not her opinion but, rather, the opinion of the driving schools who refused inspection.

This court finds that DSAO has not shown by clear and convincing evidence that the defendants' interpretation of the law is unreasonable and unmotivated. For example, Ohio Admin. Code § 4508-7-10(B)(1) provides as follows:

> The training program will be based on the principles of and cover, at a minimum, the body of knowledge contained in the "Ohio Driver Training Curriculum" prepared August, 2002. The program shall include no less than twenty-four hours of classroom instruction and eight hours of behind-the-wheel instruction for each student.

The inspection of classroom instruction, therefore, would be necessary to ensure adherence to the designated curriculum. In another example, Ohio Admin. Code § 4508-7-10(A)(4) provides that "[d]uring times of behind-the-wheel instruction, use of any items or behavior that cause unreasonable distraction shall be prohibited. No eating or drinking by students shall be permitted in the vehicle during times of instruction or while the vehicle is in motion." The inspection of behind-the-wheel instruction,

therefore, would also be necessary to ensure that the driving school has eliminated unreasonable distractions and prohibits eating and drinking by students.

Nor has DSAO shown that the policy was improperly promulgated. When an agency adopts a policy that expands the scope of a rule, it must comply with the promulgation procedures of Ohio Rev. Code § 119. *State ex rel. Saunders v. Indus. Comm*., 101 Ohio St.3d 1125, 128 (2004). On the other hand, when an agency adopts a policy that merely interprets a rule, it is exempt from the requirements of Ohio Rev. Code § 119. *Id.* The defendants have interpreted the rules authorizing the inspection of driving schools' facilities to include the inspection of the driving schools' instruction. Because their justification of the inspections rests on their interpretation of existing rules, the new inspection policy is exempt from the requirements of Ohio Rev. Code § 119.

Although the Ohio Ann. Code has neither expressly authorized nor prohibited the defendants from inspecting classroom and behind-the-wheel instruction, it has explicitly authorized the defendants to inspect the driving schools' facilities. As at least one other court has found, it is reasonable to interpret the term "facilities" to include teacher instruction. *See Mashak*, 367 S.W.2d at 629. Because the defendants' interpretation of the code is not unreasonable and was not promulgated in violation of Ohio Rev. Code. § 119, this court does not find them to be in contempt of the 1992 injunction.

> *B.     Defendants' Misuse of Inspections as a "Duck Blind" from which to Conduct Investigations*

DSAO claims that the defendants unreasonably used the investigation of specific complaints filed against certain driving schools as an opportunity to conduct full annual inspections. DSAO also claims that the defendants used inspections as "baseless fishing expedition[s]" to look for potential violations. This court finds that the defendants' decision to conduct annual investigations while

investigating specific complaints is neither unreasonable nor unmotivated. Rather, the combination of these activities is efficient and logical.

In addition, DSAO claims that, during an investigation, LaRue conducted an inspection wherein he observed classroom instruction, took notes on a laptop, riffled through students' papers on their desks, found within those papers a student's reference to improper freeway driving instruction, and accosted the student for the purpose of taking an affidavit from her. According to DSAO, this caused a great disruption to the instructor and the other students.

This court finds that DSAO has not proved the specific allegations of contempt against LaRue by clear and convincing evidence. While investigating a complaint against Heights Driving School that was filed by student Andrew DeGennaro, LaRue also conducted an annual inspection of the facilities. LaRue testified that he looked at the student papers that sat on their desks during a break, but he did not riffle through them. He also testified that he took an affidavit from a student whose office record indicated that she received impermissible driving instruction on a freeway. He took that student's affidavit after class was released, however. Finally, LaRue testified that neither the class instructor nor the students complained about his presence or activities. The only evidence offered by DSAO to counter LaRue's testimony was the testimony of Cox. Cox, however, was not present when LaRue conducted his investigation and inspection. Consequently, a violation of the injunction has not been proved by clear and convincing evidence.

### *C.     Defendants' Selective Enforcement of Regulations Against DSAO Members*

DSAO claims that the defendants selectively enforced the regulations against DSAO members. The defendants claim that selective enforcement is a separate issue addressed elsewhere in the court's 1992 opinion and memorandum and was not prohibited by the 1992 injunction. This court reserves

judgment on the issue. Even if selective enforcement were prohibited by the 1992 injunction, DSAO has again failed to prove contempt by clear and convincing evidence.

DSAO cites many examples of supposedly selective enforcement by the defendants, including incidents involving Jack Cox and Dan Cox at Heights Driving School ("Heights"), Carol Crisp ("Crisp") at Ault's Driving School ("Ault's"), William George ("George") at Richland Driving Academy ("Richland"), and Raymond Hutchinson ("Hutchinson") at Top Driver. For each example, however, Kadar either provided reasonable explanations for the disparate treatment or showed that the disparate treatment was merely illusory.

In its first example, DSAO claims that Kadar improperly pursued charges in December 2005 against Jack Cox, an instructor at Heights and president of DSAO, for the same violations that were properly levied against Dan Cox and Heights. As an instructor, Jack Cox should not have been charged. Kadar admits that the charges against Jack Cox were pursued in error and dismissed the charges in April 2006. DSAO claims that the charges were pursued because Cox was the president of DSAO, but such claims are speculative. DSAO has not provided clear and convincing evidence that Kadar pursued the charges against Jack Cox in retaliation and not in error.

Next, DSAO claims that Kadar selectively enforced the continuing education requirements. According to DSAO, neither Crisp of Ault's nor George of Richland had completed their continuing education requirements. Kadar initiated administrative action against both Crisp and George. The charges against Crisp were rescinded once she completed the continuing education requirements and corrected the other violations. Yet, the charges against George were not rescinded once he proved that he had completed the continuing education requirements. According to Kadar, the charge was not rescinded because a number of other violations at Richland had not been corrected. Nevertheless,

-8-

Kadar did not pursue the unrescinded continuing education charge against George once he had shown that he had fulfilled his continuing education requirement. DSAO claims that Kadar used the unrescinded charge as leverage to force a settlement agreement with George, but DSAO has not proved this fact by clear and convincing evidence.

DSAO also claims that Kadar and the ODPS took unreasonable and unmotivated actions against Dan Cox because it did not rescind charges against him when the alleged violations were corrected or were shown to be unsupported by evidence. In October 2005, LaRue inspected Heights and recommended administrative action against the school for shorting a student's instruction time, taking a student on a highway during the first two hours of behind-the-wheel instruction, failing to provide a required written copy of a student's training record, lacking sufficient bond, failing to give a comprehensive final examination, failing to make all vehicles used for instruction available for inspection, and refusing to allow inspection of classroom and behind-the-wheel instruction. DSAO claims that, although some of these violations were corrected, corresponding charges were not rescinded. Kadar, however, testified that there was reason to believe that many, if not all, of these violations had not been corrected. Again, DSAO claims that Kadar used the unrescinded charges as leverage against Heights Driving School, but DSAO has not proved this fact by clear and convincing evidence.

DSAO claims that LaRue did not recommend administrative action against Top Driver, a non-DSAO driving school, even though Top Driver, like Heights, violated the prohibition against taking students on a highway during the first two hours of behind-the-wheel instruction. LaRue, however, testified that his inspection of Top Driver was the first inspection that he had performed as an inspector and that he had not yet completed his job training. He claims that he was not sure at the time which

-9-

boxes to mark on the inspection form. DSAO also claims that Kadar did not seek administrative action against Top Driver after a different inspection by John Sawyer ("Sawyer") found that nine of ten students contacted by Sawyer reported that they were shorted instruction time. Kadar did not pursue charges, however, because the student affidavits taken by Sawyer were unsworn.

Finally, DSAO alleges that Kadar acted in retaliation against Richard Ceroni ("Ceroni") of Budget Driving School ("Budget") for testifying on behalf of DSAO. In June 2005, Kadar received a complaint against Budget. At that time, the ODPS had not hired field staff as inspectors, so inspectors from the Bureau of Motor Vehicles ("BMV") investigated Budget. The BMV inspectors reported violations, including shorted instruction time, inappropriate instructor behavior and comments, instruction of separate classes and curricula in the same classroom, lack of business separation, and improper signing of certificates. Later, Sawyer also conducted an investigation, but he did not report any violations. Unlike the BMV inspectors, Sawyer felt that the driving school had adequately separated its business from an adjacent bridal store, but classes were not in session when he made this observation. The BMV inspectors, however, were able to observe students in the classroom and did conclude that the separation of the two businesses was inadequate.

Kadar chose to base the charges levied against Budget on the BMV inspectors' report rather than on Sawyer's report. Because the BMV inspectors, unlike Sawyer, conducted their inspection while classes at Budget were in session, it is not unreasonable for Kadar to base the charges relating to instruction on the BMV report. Moreover, it is also plausible that the condition of a facility could seem adequate when classes are not in session, but prove inadequate when classes are in session. DSAO has not proved by clear and convincing evidence that the charges levied against Budget were unreasonable or that they were levied in retaliation for Ceroni's participation in this suit.

The evidence before this court suggests that charges against driving schools, whether members of DSAO or not, were generally treated alike by the defendants. In sum, a charge was rescinded when a deficiency was corrected (Ault's), when evidence in support a charge was lacking or inadmissible (Top Driver), or when a charge was mistakenly filed (Heights).. A charge was not rescinded, however, when the underlying deficiency was not satisfactorily corrected (Heights) or when additional charges were still pending against a school (Heights and Richland). In the case of Ceroni and Budget, it was not unreasonable for Kadar to base the charges on the findings received from investigators at the BMV, and DSAO did not prove by clear and convincing evidence that the charges were pursued in retaliation for Ceroni's role in this matter.

DSAO did not provide clear and convincing evidence that pursued charges were unwarranted, or that unrescinded but not pursued charges were used for any improper purpose, such as leverage for inducing a settlement. Moreover, DSAO did not even establish that the defendants knew which driving schools were members of DSAO and which schools were not, a helpful fact for alleging selective enforcement. Contempt, therefore, has not been proved by clear and convincing evidence.

### *D. Kadar's Interference with Cox's Teaching Relationship*

DSAO claims that Kadar interfered with Cox's teaching relationship with Ashtabula Driving School. DSAO claims that Kadar induced Floyd Tackett ("Tackett"), the owner of Ashtabula Driving School, to drop Cox from the faculty of a remedial instructor course because Cox refused to allow inspectors to observe his instruction. According to Tackett, however, Kadar never threatened to take any action against Tackett or his school if the school continued to employ Cox. In a telephone conversation recorded by Tackett without Kadar's knowledge, Tackett himself even suggested that he

fired Cox because enrollment in the course was low and his school had a sufficient number of instructors to meet the enrolled students' needs.

| | |
|---|---|
| MR. TACKETT: | I got a phone call today and you can guess who from. |
| MS. KADAR: | Yeah. |
| MR. TACKETT: | And he's not happy. |
| MS. KADAR: | Yeah. |
| MR. TACKETT: | He wants to know why he wasn't listed. And I don't know, I guess before I answer his question, I was going to try to get some feedback from you. He just isn't a happy camper. You know, he's just basically, you know, he wants to know if it's something that was done, you know, against him or because of a lawsuit or, or what did, the reasoning was. And I haven't returned his call yet. So, any feedback you can help me out with this with or . . . . |
| MS. KADAR: | Well. The first thought is what, what's the simplest path to deal with this so it doesn't overcomplicate it for you? |
| MR. TACKETT: | Right. You know, he, he is not, he's not happy. And that's an understatement. |
| MS. KADAR: | What did you get? Just a voicemail? |
| MR. TACKETT: | Yeah. I got a voicemail from him this morning. He wants to know if he's out and why he's out and all that good stuff. And I haven't exactly said he's out, but if I don't have, you know, fifteen people there, it doesn't do me any good to have him there, you know . . . . Costwise, it erodes my, you know, my reason for doing it partially, is to, you know, hopefully get some type of return from it. . . . You know, and if I don't have enough people there, I'm, I'm not going to pay everything out and everyone make more than I do, you know, if that's the case it's better not to run the class. |

DSAO claims that Kadar threatened Tackett when she suggested that his decision to continue employing an instructor who did not allow inspectors to observe his instruction would reflect poorly upon Ashtabula Driving School's credibility.  Kadar, however, never instructed Tackett to dismiss Cox and never threatened punitive or consequential action for allowing Cox to teach.  In fact, she explicitly stated in the recorded telephone conversation that the decision to continue employing Cox was Tackett's decision: "It's purely your decision.  If you want him there, you can do that."  Consequently, DSAO has not shown by clear and convincing evidence that Kadar's actions were unreasonable or unmotivated.

**IV.    Conclusion**

Because DSAO has failed to show by clear and convincing evidence that the defendants' actions were unmotivated and unreasonable, this court will not hold the defendants in contempt of court. Plaintiff's motion, therefore, is denied.  This order is final and appealable.

IT IS SO ORDERED.

          */s/ Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: March 19, 2009**